**Justin AMADOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–04–507 CR.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 28, 2007.

Delivered Dec. 12, 2007.

W. Troy McKinney, Schneider & McKinney, P.C., Houston, for appellant.

Michael A. McDougal, Dist. Atty., Stella Stevens, Gail Kikawa McConnell, Asst. Dist. Atty's, Conroe, for state.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This cause is before us on remand from the Court of Criminal Appeals. *See Amador v. State*, 221 S.W.3d 666, 667–68 (Tex. Crim.App.2007). Justin Amador pled guilty to misdemeanor DWI after the trial court denied his motion to suppress evidence. *Amador v. State*, 187 S.W.3d 543, 545 (Tex.App.-Beaumont 2006), *rev'd*, 221 S.W.3d 666 (Tex.Crim.App.2007); *see* TEX. PEN.CODE ANN. § 49.04(b) (Vernon 2003). The trial court sentenced Amador to 180 days in the county jail, suspended the sentence, and placed him on community supervision for one year. *See* TEX. PEN.CODE ANN. § 12.22 (Vernon 2003). Amador appealed the trial court's ruling on his suppression motion, and this court affirmed. *Amador*, 187 S.W.3d at 550. On remand, we reconsider Amador's arguments that the trial court erred in denying his motion to suppress.[1] We find the evidence from the suppression hearing insufficient to support a finding of probable cause, and therefore hold the trial court should have granted Amador's motion. Accordingly, we reverse the trial court's judgment and remand the case for a new trial.

## BACKGROUND

Department of Public Safety ("DPS") Trooper Angela Fountain stopped Amador for speeding early in the morning of June 3, 2003. Amador concedes that the trooper properly stopped him for speeding, but contends that the stop lasted longer than necessary to achieve its purpose. He further contends that the State failed to prove probable cause to support his arrest.

At the suppression hearing, Trooper Fountain testified about her interaction with Amador immediately following the traffic stop. The trial court viewed portions of the videotape of the stop during the hearing. During their initial conversation, Trooper Fountain observed that Amador's speech was "mumbled." The videotape of this portion of the stop reflects that he possibly mumbled only his current address. After asking for Amador's license and insurance, Trooper Fountain noticed that he was "extremely slow to respond" and "fumbled through and passed over his driver's license on more than one occasion." How Amador retrieved his license is not evident in the videotape. But, the trooper also testified that Amador did not slur his speech.

After determining that Amador had no outstanding warrants, Trooper Fountain asked him to step out of his car. Trooper Fountain testified that Amador exited

---

1. In the initial appeal, we held that we were required to presume that the videotape shown to the trial court during the hearing supported the trial court's ruling because the trial court saw the videotape during the hearing but the tape was not admitted into evidence. *Amador v. State*, 187 S.W.3d 543, 549 (Tex.App.-Beaumont 2006), *rev'd*, 221 S.W.3d 666 (Tex.Crim.App.2007). The Court of Criminal Appeals reversed our decision, and required the trial judge to identify for the record the portions of the videotape viewed at the hearing. *Amador v. State*, 221 S.W.3d 666, 668–69 (Tex.Crim.App.2007). Subsequently, the trial court identified an approximate five minute portion of the videotape played during the hearing, and the parties supplemented the appellate record with this portion of the videotape.

more slowly than normal, but that he did not stumble, stagger, or lean on his car for support. The videotape shows a slight delay between the time that Amador opened his door and exited his car. While issuing Amador a warning for speeding, the trooper smelled alcohol on his breath. The videotape depicts Trooper Fountain's inquiry about whether Amador had anything to drink, and his response, in which he denied drinking any alcohol-containing beverage.

Because of Amador's mumbled speech, his slowness in getting his license, and the smell of alcohol on his breath, the trooper decided to perform standardized field sobriety tests. Based on Amador's performance on the horizontal-gaze-nystagmus, the walk-and-turn, and the one-leg-stand, Trooper Fountain arrested Amador for driving while intoxicated. Trooper Fountain did not further explain how Amador failed to pass his field sobriety tests or explain the clues from the field sobriety testing that caused her to arrest Amador for DWI. The videotape shown to the trial court did not depict the field sobriety tests. Instead, the videotape ends shortly after Amador signed the warning for speeding issued by Trooper Fountain.

Amador raises two appellate issues. First, he contends that his detention to investigate whether he was driving under the influence of alcohol was illegal. Second, he contends the State failed to show there was probable cause to arrest him for driving under the influence.

## STANDARD OF REVIEW

■ This Court reviews a trial court's ruling on a motion to suppress for an abuse of discretion. *Dyar v. State,* 125 S.W.3d 460, 462 (Tex.Crim.App.2003). We give almost total deference to the trial court's determination of historical facts, while conducting a de novo review of the

trial court's application of the law to those facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000). When, as here, the trial court does not file findings of fact and conclusions of law, "we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* at 855. As the sole trier of fact at the suppression hearing, the trial judge "evaluates witness testimony and credibility." *Torres v. State,* 182 S.W.3d 899, 902 (Tex.Crim.App. 2005) (citing *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.2002)).

■ When the defendant shows that a search or seizure occurred without a warrant, "the burden shifts to the state to prove the reasonableness" of the warrantless search or seizure. *Id.* Whether probable cause to arrest is then sufficient depends upon the "totality of the circumstances." *Id.* (citing *Amores v. State,* 816 S.W.2d 407, 413 (Tex.Crim.App. 1991)). "[P]robable cause must be based on facts, not opinions." *Id.; see also Ford v. State,* 158 S.W.3d 488, 493–94 (Tex.Crim.App.2005). The *Ford* Court explained that "[m]ere opinions are ineffective substitutes for specific, articulable facts...." *Ford,* 158 S.W.3d at 493. The Court further stated that reliance on a police officer's special training is "insufficient to establish reasonable suspicion absent objective factual support." *Id.* at 494.

## APPLICATION OF LAW TO FACTS

### A. Scope of Detention

■ In issue one, Amador argues that the scope of his detention exceeded the justification for his initial stop. Amador argues that once Trooper Fountain issued a warning for speeding, she had no reason

to expand her investigation into whether he was driving while intoxicated.

Amador, however, ignores several facts. Trooper Fountain noted Amador's difficulty in complying promptly to her ordinary requests for license and insurance information and his unusually slow movement when exiting his vehicle. Also, the tape of the stop indicates that Trooper Fountain smelled signs of an alcoholic beverage on Amador's breath after she issued the warning, and that she asked Amador how much alcohol he had to drink. Amador denied having had any alcohol, which was inconsistent with Trooper Fountain's impression. Under these circumstances, we conclude that the detention was not unduly prolonged by Trooper Fountain's decision to conduct field sobriety tests.

The cases upon which Amador relies to establish an unreasonable detention are distinguishable. Amador cites *Davis v. State,* 947 S.W.2d 240 (Tex.Crim.App.1997) for the proposition that articulable facts must support a continued detention. The detainment in *Davis* is factually distinguishable and was much more prolonged than Amador's. In *Davis,* the police stopped a driver for suspicion of driving while intoxicated; however, they did not smell alcohol on the driver and admitted that they ruled out DWI early in their investigation. *Id.* at 245. Nevertheless, after the officers' investigation revealed nothing to support DWI, which was the purpose of their stop, they continued their investigation, interrogated the driver and his passenger separately, performed background checks on both the driver and his passenger, did a pat-down search of the driver, and held the car at the scene so a dog could sniff it for the presence of narcotics. *Id.* at 241, 245. When the dog arrived, the dog alerted on the car's trunk, and at that point the driver consented to the search of his trunk. *Id.* at 241. The

police found a suitcase containing marihuana during their search of the car's trunk. *Id.* The *Davis* Court held the prolonged detention was unreasonable under those circumstances because the negative results of the investigation did not justify it. *Id.* at 246.

Here, the facts justified further investigation into Amador's sobriety, and comparable delays do not exist. Trooper Fountain conducted the field sobriety tests on Amador after she perceived that he had been drinking. Trooper Fountain's detection of alcohol on Amador's breath, her prior observation of Amador's mumbled speech, and her impression of his slowness in exiting his vehicle all arose as products of the stop. Unlike *Davis,* the products of the trooper's investigation were not the result of a prolonged stop. Also, unlike *Davis,* Trooper Fountain's investigation reasonably resulted from facts she observed after she stopped Amador for speeding.

Amador also relies on *State v. Daly* for the proposition that "the existence of reasonable suspicion must *precede* a detention...." 35 S.W.3d 237, 241 (Tex.App.-Austin 2000, no pet.). *Daly* is also distinguishable from this case. In *Daly,* the traffic-stop investigation did not result in information justifying the officer's subsequent drug-possession investigation. *Id.* at 239–40. Trooper Fountain, unlike the police officers in *Daly,* obtained information that justified her decision to perform field sobriety tests. Another important distinction is that in *Daly,* the trial judge granted the motion to suppress, and here the trial judge denied the motion to suppress. *Id.* at 239. Thus, the presumptions on resolving fact issues favored the defendant in *Daly,* but favor the State in the present case.

■ Although the police cannot unduly prolong an investigation for a traffic viola-

tion, it is also settled that an officer may make an arrest for other offenses discovered during the investigation. *Taylor v. State*, 421 S.W.2d 403, 407 (Tex.Crim.App. 1967); *Perales v. State*, 117 S.W.3d 434, 439 (Tex.App.-Corpus Christi 2003, pet. ref'd). After reviewing the record of the suppression hearing, and the portions of the videotape contained in the record, we find the State demonstrated facts to support a finding that Amador's detention for a field sobriety test was reasonable. We overrule issue one.

### B. Probable Cause

In issue two, Amador asserts the State failed to meet its burden to show probable cause justifying his arrest. The State contends that the record contains sufficient evidence to support the trial court's denial of the motion to suppress.

We examine the reasonableness of Amador's arrest, and specifically the existence of probable cause, considering all the circumstances. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Hulit v. State*, 982 S.W.2d 431, 435–36 (Tex.Crim.App.1998). Probable cause requires that an officer have a reasonable belief, based on facts or circumstances within the officer's personal knowledge, or based upon reasonably trustworthy information, that an offense has been committed. *See Torres*, 182 S.W.3d at 901–02. Generally, appellate courts afford almost total deference to a trial court's determination of the historical facts supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). A videotape of a stop involving a charge for driving while intoxicated that depicts the driver's impairment would be relevant to the issue of intoxication. *See Miffleton v. State*, 777 S.W.2d 76, 80 (Tex. Crim.App.1989) (finding that videotape compelling a DWI suspect to perform so-

briety tests was admissible). In this case, Amador's attorney introduced the videotape; so no one questions whether portions of the tape depict custodial interrogations. Evidence introduced in a DWI trial is not necessarily limited to oral testimony, but in appropriate cases may include relevant photographs or videotapes. *See* Tex.R. Evid. 401, 1001; *Griffith v. State*, 55 S.W.3d 598, 600–01 (Tex.Crim. App.2001) (finding that audio portions of videotape circumstantially relevant because any signs of impairment in speech are relevant to definition of intoxication); *Jones v. State*, 795 S.W.2d 171, 175–76 (Tex.Crim.App.1990) (finding that audio portions of videotape may be admitted where questioning did not call for testimonial responses); *Smith v. State*, 105 S.W.3d 203, 207 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (finding that audio portions of video are relevant to issue of intoxication because the impairment in one's ability to speak is relevant to whether one was driving while intoxicated).

At the suppression hearing, the trial court heard the testimony of Trooper Fountain and viewed a portion of the videotape. The videotape viewed by the court depicts the stop, but does not include the field sobriety test. We have reviewed the pertinent portion of the videotape, and find that Amador's behavior depicted in it is insufficient to demonstrate probable cause for Amador's arrest.

Thus, the issue in this case becomes whether the State met its burden of proof through Trooper Fountain's testimony about Amador's field sobriety test. First, we observe that Trooper Fountain testified that while writing Amador a warning for speeding, she had no intention to arrest him. She testified that nothing in the manner that Amador pulled his car over indicated that he had lost the use of his mental or physical faculties, and that noth-

ing about his driving indicated that he was intoxicated. The sole reason for her decision to stop Amador was that he was speeding.

 Upon issuing the warning, the videotape reflects that Trooper Fountain smelled alcohol on Amador's breath, and in response to Trooper Fountain's question about drinking, Amador denied drinking beverages containing alcohol. However, Trooper Fountain did not arrest Amador for having alcohol on his breath, as Trooper Fountain's testimony reflects that she agreed that an odor of alcohol is not indicative of intoxication. As pointed out by our sister court of appeals:

> so long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for public intoxication based solely on whether the odor of alcohol on a person's breath is "strong," "moderate," "weak" or some other such subjective classification invites unwarranted police intrusions into the affairs and freedom of persons.

*Domingo v. State,* 82 S.W.3d 617, 622 (Tex. App.-Amarillo 2002, no pet.).

While we hold that Trooper Fountain had sufficient grounds to detain and extend her investigation into whether Amador was driving under the influence of alcohol, proving probable cause requires more. With respect to probable cause, the Court of Criminal Appeals has stated:

> Probable cause exists where the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997); *Amores v. State,* 816 S.W.2d [407, 413 (Tex.Crim.App.1991)]. Probable cause requires more than mere suspicion but far less evidence than that needed to

support a conviction or even that needed to support a finding by a preponderance of the evidence. *Guzman v. State,* 955 S.W.2d at 87.

*Hughes v. State,* 24 S.W.3d 833, 838–39 (Tex.Crim.App.2000). More recently, the Court of Criminal Appeals stated that "probable cause is the accumulation of facts which, when viewed in their totality, would lead a reasonable police officer to conclude, with a fair probability, that a crime has been committed or is being committed by someone." *Parker v. State,* 206 S.W.3d 593, 599 (Tex.Crim.App.2006).

No relevant facts concerning Amador's performance on the field sobriety tests were elicited at the hearing. Trooper Fountain's complete description of Amador's field sobriety testing consisted of the following:

Q. [Prosecutor] Based on those three things, the mumbled speech, the slowness at getting the license and the alcohol, what did you decide to do?

A. I felt I needed to investigate further by performing standardized field sobriety tests.

Q. [Prosecutor] And did you perform those tests?

A. Yes, ma'am, I did.

Q. [Prosecutor] What tests did you have him do?

A. Did the horizontal gaze nystagmus, the walk and turn and the one-leg stand.

Q. [Prosecutor] And on the basis of all of those tests and how the defendant performed, what did you decide to do?

A. I placed him under arrest for driving while intoxicated.

At that point, the prosecutor advised the court that it had "Nothing further, Your Honor." Likewise, Amador's attorney also offered no additional evidence.

Trooper Fountain did not expressly testify that Amador failed the field sobriety test. The State argues that we should infer that he failed the tests from Trooper Fountain's statement that she decided to arrest Amador for DWI. But, to do so would require that we speculate that the field sobriety test revealed clues that tended to show that Amador was intoxicated. We decline to do so.

The testimony elicited by the parties at the hearing fails to demonstrate that Trooper Fountain had reasonable facts to support her decision to arrest Amador.[2] Determining whether a reasonable police officer would conclude that Amador was intoxicated would likely require the trooper to articulate at least some of the relevant details about Amador's performance on the field sobriety test.

Requiring the State to spend the time to develop a record sufficient to meet its burden of showing probable cause in a warrantless arrest is not a waste of judicial resources or time spent on a foregone conclusion, as the State suggests.[3] We conclude that the record from Amador's suppression hearing does not contain sufficient facts to demonstrate probable cause for his warrantless arrest. This record contains neither the trooper's statement of an opinion that Amador failed the field sobriety tests, nor articulable facts to demonstrate how, in the officer's judgment, the driver failed the test. In our opinion, the record must contain such facts to sustain the State's burden when the defendant's arrest was made without a warrant.

Because the record contains insufficient evidence to demonstrate probable cause, Amador's warrantless arrest was illegal, making any evidence obtained thereby inadmissible. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). We sustain issue two. We hold that the trial court erred in denying Amador's motion to suppress, reverse the judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

**2.** We find nothing in this record that would have prevented the parties from introducing the entire videotape that may have shown the field sobriety tests, or from examining Trooper Fountain further in order to explain how Amador performed on his field sobriety test.

**3.** In its amended brief, the State argues that further detail is "unnecessary" because requiring it would "prolong hearings on motions to suppress to address matters that are of a foregone conclusion and to waste the [scarce] judicial resources of the district and county courts and the time of our law enforcement officers."