

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## No. PD-0144-08

### JUSTIN AMADOR, Appellant

### v.

### THE STATE OF TEXAS

### ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
### IN CAUSE NO. 09-04-507-CR FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. JOHNSON, J., concurred in the result. MEYERS, J., dissented.

The court of appeals held that the trial court erred in denying appellant's motion to suppress.

We reverse.

*The Controversy*[1]

---

[1] This case has a complicated procedural history. In our opinion today, we discuss only that portion of the procedural history that is relevant to the issue presently before us. Those wanting a complete procedural history will find it in the opinion of the court of appeals. *See*

(continued...)

On June 24, 2003, an assistant district attorney in Montgomery County presented an information in the trial court charging appellant with misdemeanor driving while intoxicated (DWI). The information alleged that, on or about June 3, 2003, appellant operated a motor vehicle in a public place while he "did not have the normal use of [his] mental and physical faculties by reason of the introduction of alcohol . . . into [his] body."[2]

On January 6, 2004, appellant filed a written motion to suppress "any and all evidence" obtained as a result of an illegal, warrantless arrest "made without probable cause to believe [he] was engaged in criminal activity."[3] In support of his motion, appellant cited the Fourth Amendment to the Constitution of the United States.[4]

On May 7, 2004, the trial court held an evidentiary hearing on appellant's motion to suppress.

---

[1](...continued)
*Amador v. State*, 242 S.W.3d 95 (Tex.App.–Beaumont 2007).

[2] Texas Penal Code § 49.04(a) provides: "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." Texas Penal Code § 49.01(2)(A), in turn, provides: "'Intoxicated' means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance in the body."

[3] Appellant's motion to suppress did not identify what evidence he wanted suppressed, nor, as far as we can discern from the record, was such evidence identified at the suppression hearing. This is troubling. As Professor LaFave has pointed out, a motion to suppress "must . . . identify the items which the defendant seeks to suppress." W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(a) at 35 (4th ed. 2004). In the absence of such identification, the State and the trial court are left unaware of how the defendant was harmed by the allegedly illegal government activity. It could be argued that, under such circumstances, the trial court could properly deny the motion to suppress as inadequate. *See O'Neal v. United States*, 222 F.2d 411, 412 (D.C. Cir. 1955); *State v. Bell*, 832 S.W.2d 583, 587 (Tenn.Crim.App. 1991); *Norman v. State*, 302 So.2d 254, 257 (Miss. 1974). In the instant case, however, the State has not made such an argument, and we did not grant review to consider it.

[4] Evidence obtained in violation of the Fourth Amendment may not be introduced at trial for the purpose of proving the defendant's guilt. *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961).

At that hearing, appellant called to the witness stand the arresting officer, Department of Public Safety (DPS) Trooper Angela C. Fountain, and played for the court a portion of Fountain's patrol-car videotape.[5] The State cross-examined Fountain but presented no evidence of its own. According to Fountain's testimony, on the early morning of June 3, 2003, she "work[ed] radar" in her patrol car on Interstate Highway 45. At approximately 2:30 a.m., she observed appellant's car traveling onto the Interstate "at a high rate of speed," in excess of the posted speed limit. She followed him on the Interstate about a quarter-mile, until the next exit, where they both turned off. She then activated her patrol car's overhead emergency lights. Appellant pulled into a parking lot and stopped, and Fountain stopped behind him. Fountain then exited her patrol car, approached appellant's car, and asked him for his driver's license and proof of insurance. He "was extremely slow" in responding to her requests. "He fumbled through [his wallet] and passed over his driver's license on more than one occasion, and it took some time for him to provide . . . his driver's license and insurance." In addition, "his speech was mumbled, real under his breath and mumbled." Fountain returned to her patrol car briefly to check for outstanding warrants, after which she again approached appellant's car and asked him to step out. Appellant complied but "was slower than normal" in doing so. Once appellant was out of his car, Fountain "smelled the odor of alcoholic beverage coming from his breath." She then had appellant perform three field sobriety tests, those tests being the horizontal-gaze-nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test.[6] On the basis of

---

[5] The videotape, which is in the record, was apparently shot by a video camera mounted on Fountain's patrol car, which was parked a short distance behind appellant's car. The audio and video quality of the tape is mediocre.

[6] The record does not reflect whether Fountain asked appellant to perform the field sobriety tests or whether she ordered him to do so.

appellant's performance on the tests, Fountain arrested him for driving while intoxicated.[7]

Fountain testified further that she did not have a warrant for appellant's arrest, that "speeding [was] not an arrestable offense" in this state,[8] that she had been "trained in administering standard field sobriety tests," and that she had videotaped her encounter with appellant.

The portion of the patrol-car videotape that appellant played for the trial court corroborated Fountain's testimony about how appellant turned off the Interstate and pulled into a parking lot, and about how he was slow in exiting his vehicle when asked to do so. But, the portion of the tape played for the court did not depict Fountain's administration of the field sobriety tests or the manner in which appellant located his driver's license and proof of insurance and gave them to Fountain.

---

[7] Fountain did not explain the nature of the field sobriety tests in question, nor did she state explicitly how appellant performed on them. Her testimony concerning the field sobriety tests and her subsequent arrest of appellant was follows:

Q: Based on those three things, the mumbled speech, the slowness at getting the license, and the alcohol, what did you decide to do?

A: I felt I needed to investigate further by performing [sic] standardized field sobriety tests.

Q: And did you perform [sic] those tests?

A: Yes, ma'am, I did.

Q: What tests did you have him do?

A: Did the horizontal gaze nystagmus, the walk and turn, and the one leg stand.

Q: And on the basis of all those tests and how [appellant] performed, what did you decide to do?

A: I placed him under arrest for driving while intoxicated.

[8] See Tex. Transp. Code § 543.004(a)(1) ("[a]n officer shall issue a written notice to appear if the offense charged is speeding").

Nor did the videotape corroborate Fountain's testimony that appellant's speech was "real under his breath and mumbled." Indeed, from what one could hear by listening to the tape, it seemed that appellant's speech was fairly normal.[9,10] On the other hand, the portion of the tape played for the court revealed facts about which Fountain had not testified, to wit: Once appellant exited his vehicle and was standing next to Fountain, she asked him how much he had had to drink that night. He responded by denying that he had had anything to drink that night. She then asked him whether there was any reason she could smell alcoholic beverage "coming from [his] breath." He again responded by denying that he had had anything to drink.

At the close of the evidence at the suppression hearing, defense counsel argued to the court that it should grant appellant's motion to suppress because he had been arrested without a warrant and without probable cause. Defense counsel complained in particular that:

> "[T]he State failed to show you other than in conclusory terms that [appellant] failed [the] field sobriety tests. They are undescribed field sobriety tests. How he did on those tests was not described to you. It wasn't my burden. It's [the State's] burden. All you heard was that he did – she did an HGN, a walk and turn test, and a one leg stand. You never even heard he failed them. I know you didn't hear why he failed them."

The State argued to the court that it should not grant appellant's motion to suppress because Fountain had probable cause to arrest appellant for driving while intoxicated:

> "[Appellant] was speeding. The officer stopped him for suspicion of speeding . . . When she asked him for his driver's license, he was slow in producing it. His speech was mumbled. She asked him to step out of the car. He had an odor of alcohol on his beverage [sic]. Based on that, she had him perform field sobriety tests, and as a

---

[9] *But see* footnote three, *supra* (audio quality of videotape is mediocre).

[10] The court of appeals commented that "[t]he videotape . . . reflects that [appellant] possibly mumbled only his current address." *Amador v. State*, 242 S.W.3d 95, 97 (Tex.App.–Beaumont 2007).

result of that, she had probable cause to arrest [him] for driving while intoxicated."

At the close of the parties' arguments, the trial court took appellant's motion to suppress under advisement. On June 16, 2004, the trial court informed the parties by letter that it had denied appellant's motion to suppress. The trial court did not issue any findings of fact or conclusions of law.

On September 29, 2004, appellant filed a written motion asking the trial court to reconsider its denial of his motion to suppress. On October 12, 2004, the trial court heard appellant's motion to reconsider. At that time, appellant argued:

> "[T]he court reviewed the videotape, which was placed before this court in the hearing. And there is no mumbled speech on the tape. There is no slow reaction.[11] So, no matter what [Fountain] said she observed or heard, it just wasn't there."

The State argued in response:

> "[Fountain] said [appellant] was slow to respond, seemed to be fumbling for his license, and I think that coupled with what she perceived that evening [was] slurred speech. Now, did we hear it on the video? I can't recall if we did or not, but the quality of the video is not as good as her ears right there that night when she said she perceived fumbling with the license, slurred speech. She said when she was handing [his driver's license and proof of insurance] to him, she smelled alcohol."

After hearing these arguments, the trial court denied appellant's motion to reconsider. Immediately thereafter, appellant pled guilty, pursuant to a plea bargain, to the misdemeanor offense of driving while intoxicated, as charged in the information. The trial court assessed appellant's punishment at confinement in the county jail for 180 days, probated for one year, and a fine of $600.

On direct appeal, appellant argued that the trial court erred in overruling his motion to suppress. With respect to that claim, both appellant and the State reiterated the arguments that they

---

[11] As we noted previously, Fountain's patrol-car videotape corroborated her testimony that appellant was slow in exiting his vehicle.

made in the trial court.

The court of appeals accepted appellant's argument, reversed the judgment of the trial court, and remanded the case for further proceedings. *Amador v. State*, 242 S.W.3d 95, 102 (Tex.App.–Beaumont 2007). The court of appeals, without citing any relevant authority, explained its decision as follows:

> "At the suppression hearing, the trial court heard the testimony of Trooper Fountain and viewed a portion of the videotape. The videotape viewed by the court depicts the stop, but does not include the field sobriety test [sic]. We have reviewed the pertinent portion of the videotape, and find that Amador's behavior depicted in it is insufficient to demonstrate probable cause for Amador's arrest.
> "Thus, the issue in this case becomes whether the State met its burden of proof through Trooper Fountain's testimony about Amador's field sobriety test [sic].
>
> \* \* \*
>
> "Trooper Fountain did not expressly testify that Amador failed the field sobriety test [sic]. The State argues that we should infer that he failed the tests from Trooper Fountain's statement that she decided to arrest Amador for DWI. But, to do so would require that we speculate that the field sobriety test [sic] revealed clues that tended to show that Amador was intoxicated. We decline to do so.
> "The testimony elicited by the parties at the hearing fails to demonstrate that Trooper Fountain had reasonable facts to support her decision to arrest Amador. Determining whether a reasonable police officer would conclude that Amador was intoxicated would likely require the trooper to articulate at least some of the relevant details about Amador's performance on the field sobriety test [sic].
>
> \* \* \*
>
> "We conclude that the record from Amador's suppression hearing does not contain sufficient facts to demonstrate probable cause for his warrantless arrest. This record contains neither the trooper's statement of an opinion that Amador failed the field sobriety tests, nor articulable facts to demonstrate how, in the officer's judgment, the driver failed the test [sic]. In our opinion, the record must contain such facts to sustain the State's burden when the defendant's arrest was made without a warrant." *Id*. at 100 & 102.

The State later filed a petition for discretionary review, which we granted. *See* Tex. R. App. Proc. 66.3(c). In its brief to this Court, the State argues that, given Fountain's testimony at the suppression hearing, the trial court could have reasonably inferred that appellant failed the field

sobriety tests on the morning in question. The State argues in the alternative that, "in the totality of the circumstances, Trooper Fountain had probable cause to arrest Appellant for DWI even without the field sobriety tests."

In his reply brief, appellant, citing *Ford v. State*, 158 S.W.3d 488 (Tex.Crim.App. 2005), argues that "[a] trial court may not rationally infer . . . that a person failed field sobriety tests without evidence that the tests were failed, and the mere fact that a person was arrested is no basis for such an inference." Appellant argues further that "specific facts are necessary to satisfy the constitutional requirements for . . . probable cause."

*The Relevant Law*

The Fourth Amendment to the Constitution of the United States guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 650 (1961). Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *United States v. Watson*, 423 U.S. 411, 418 (1976).

"Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, *id*. at 97, and it requires a consideration of the totality of the circumstances facing the arresting officer, *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). A finding of probable cause requires "more than

bare suspicion" but "less than . . . would justify . . . conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).[12]

"An offense is deemed to have occurred within the presence . . . of an officer when any of his senses afford him an awareness of its occurrence." *State v. Steelman*, 93 S.W.3d 102, 107 (Tex.Crim.App. 2002).

A defendant who alleges a seizure, such as an arrest, in violation of the Fourth Amendment has the burden of producing some evidence that rebuts the presumption of proper police conduct. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.CrimApp. 1986). A defendant may carry this initial burden by establishing that the seizure occurred without a warrant. *Ibid*.[13] If this showing is made, then the burden shifts to the State to prove that the seizure was nonetheless reasonable. *Id*. at 10.

The trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). Moreover, at a suppression hearing, the trial court, like any factfinder, may make reasonable inferences from the evidence presented. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008); *Kelly v. State*, 163 S.W.3d 722, 726 (Tex.Crim.App. 2005); *Farmah v. State*, 883 S.W.2d 674, 678 (Tex.Crim.App. 1994); 22A C.J.S. *Criminal Law* § 1081 (2006).

A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). "In other words, the trial court's ruling will be upheld if it is reasonably

---

[12] The United States Supreme Court has never specified what degree of probability is required for probable cause to arrest. *See* W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2(e) (4th ed. 2004).

[13] The State has never disputed that Fountain had no warrant for her arrest of appellant.

supported by the record and is correct under any theory of law applicable to the case." *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).

*Analysis*

In the instant case, the trial court, without issuing any findings of fact or conclusions of law, denied appellant's motion to suppress grounded on the Fourth Amendment. Thus, the trial court implicitly concluded that the State carried its burden of proving that, under the totality of the circumstances, Fountain's warrantless arrest of appellant was reasonable, i.e., supported by probable cause for an offense committed in her presence. Our task is to determine whether the trial court, in so concluding, abused its discretion.

Given the evidence adduced at the suppression hearing, the trial court could have reasonably found, at the very least, the following basic facts: First, at the time and place in question, Fountain saw appellant operate a motor vehicle on a public roadway at a high rate of speed, in excess of the posted speed limit. Second, when Fountain asked appellant for his driver's license and proof of insurance, he fumbled through his wallet, passing over his driver's license multiple times, and he was unusually slow in providing the items requested. Third, when Fountain asked appellant to step out of his car, he was, again, unusually slow in responding to her request. Fourth, when appellant stood next to Fountain, she smelled the odor of alcoholic beverage on his breath. Fifth, when Fountain asked appellant how much he had had to drink that night, he denied having had anything to drink that night. Sixth, Fountain was trained in how to administer standard field sobriety tests. Seventh, she had appellant perform three of those standard field sobriety tests. Eighth, on the basis of appellant's performance on those tests, Fountain arrested him for driving while intoxicated.

From those basic facts, taken as a whole, the trial court could have reasonably inferred the

following facts: First, on the night in question, appellant consumed a quantity of alcoholic beverage. Second, his consumption of that alcoholic beverage impaired his mental faculties and led to his driving on the Interstate at an unsafe rate of speed and, later, his inability to quickly locate his driver's license within his wallet. Third, his consumption of the alcoholic beverage also impaired his physical faculties and led to his slowness of movement when locating his driver's license and proof of insurance and when exiting his vehicle. Fourth, appellant lied to Fountain about his drinking on the night in question, suggesting an attempt to deceive and a consciousness of guilt. Fifth, Fountain properly administered the three standard field sobriety tests in question. Sixth, appellant's performance on those tests, whatever it was, was less than ideal.

On the basis of the evidence at the suppression hearing and reasonable inferences therefrom, discussed above, the trial court could have reasonably concluded that, at the time and place in question, Fountain had facts and circumstances within her knowledge sufficient to warrant a prudent person in believing that appellant had committed, in her presence, the offense of driving while intoxicated. In other words, the record reasonably supports the trial court's implicit conclusion that the State carried its burden of proving that Fountain's warrantless arrest of appellant was properly supported by probable cause. Thus, we discern no abuse of discretion on the part of the trial court in its denial of appellant's motion to suppress.

The court of appeals erred in focusing on the evidence of Fountain's administration of the field sobriety tests and appellant's performance thereon, rather than considering the totality of the circumstances facing Fountain. The court of appeals further erred in concluding that "[d]etermining whether a reasonable police officer would conclude that Amador was intoxicated would likely require the trooper to articulate at least some of the relevant details about Amador's performance on

the field sobriety test [sic]." *Amador v. State*, 242 S.W.3d at 102. The record contains abundant evidence, discussed above, from which the trial court could have reasonably determined that a reasonable police officer could have concluded that appellant was intoxicated.

Appellant's reliance on our decision in *Ford v. State*, 158 S.W.3d 488, is misplaced. In that case, Department of Public Safety Trooper Andrew Peavy temporarily detained Matthew Ford for an alleged traffic violation and, in the course of that temporary detention, discovered contraband in Ford's vehicle. Ford, who was later indicted for possession of the contraband, filed a motion to suppress, arguing that Peavy did not have reasonable suspicion to justify the temporary detention. At the suppression hearing, the only evidence presented concerning the reasonableness of the temporary detention was Peavy's testimony that he stopped Ford's vehicle because it was "following too close behind" the vehicle in front of it. The trial court denied the motion to suppress, and the court of appeals upheld that denial. We reversed, holding that Peavy's testimony was nothing more than "a conclusory statement that Ford [had] violate[d] a traffic law" and was, therefore, insufficient to reasonably support a finding of reasonable suspicion. *Id*. at 493-94. In the instant case, in contrast, the record contains abundant non-conclusory evidence, discussed above, supporting a finding of probable cause. Thus, *Ford* is distinguishable on its facts.

We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

DELIVERED JANUARY 14, 2009

PUBLISH