

# MEMORANDUM OPINION

No. 04-09-00428-CR

The **STATE** of Texas,
Appellant

v.

Jennifer **WHARTON-HASTY**,
Appellee

From the County Court, Bandera County, Texas
Trial Court No. 09-00071
Honorable Richard A. Evans, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   June 16, 2010

AFFIRMED

The State of Texas appeals the trial court's order granting a motion to suppress. In its brief,

the State lists six points of error; however, the State argues all six points of error together "[b]ecause

of the similar nature of the arguments for each Point of Error, and the narrowness of scope of the

overall issues to be presented to this Court." Having reviewed the brief, we address the State's

contention that the trial court erred in concluding that no evidence warranted the detention of

Jennifer Wharton-Hasty for suspicion of driving while intoxicated.[1]

### BACKGROUND

The trial court entered written findings of fact and conclusions of law after denying the

motion to suppress. The following background is based on the trial court's findings and conclusions.

Hasty was stopped by Officer Douglas Allen Kelley for an equipment violation of no license

plate light. At the suppression hearing, Hasty did not contest the reasonableness of the stop, but

rather contested her continued detention after the purpose for the detention for the equipment

violation was effectuated. Officer Kelley had observed the equipment violation, as well as Hasty's

manner of driving, on two occasions before he stopped her. Officer Kelley never witnessed Hasty

operating her vehicle in an improper manner or had any suspicion that she was driving while

intoxicated. After stopping Hasty for the equipment violation, Officer Kelley determined that Hasty

had a valid driver's license and no warrants for her arrest. After Officer Kelley had written a citation

for the equipment violation, he continued to detain Hasty and asked her to step out of her vehicle.

Hasty was wearing shoes with a 2 inch heel, and the area where Hasty was stopped was dark, under

construction, and had an unlevel surface of gravel and dirt. The area was also wet due to recent rain.

Officer Kelley testified that he detained Hasty for suspicion of driving while intoxicated and

requested that she perform field sobriety tests after he observed that Hasty was unsteady on her feet

---

[1] We note that two of the points of error listed in the State's brief relate to the trial court's denial of the State's request for additional findings of fact and conclusions of law. The State does not brief these issues in its argument; therefore, we do not address this complaint. TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record).

at one instance after Hasty exited the vehicle. Specifically, Officer Kelley testified that Hasty was unsteady on her feet when she stepped around the rear of the car. The trial court viewed the video of Hasty exiting the vehicle and stepping around the rear of the vehicle, and found that Hasty was not unsteady on her feet.

Based on these findings, the trial court granted Hasty's motion to suppress. The trial court concluded, "There was not evidence pointing to specific articulable facts which taken together with rational inferences from those facts, reasonably warranted the detention of HASTY for suspicion of driving while intoxicated."

### STANDARD OF REVIEW

A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id*. at 878-79.

This same highly deferential standard applies regardless of whether the trial court has granted or denied a motion to suppress evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The appellate court then reviews the trial court's legal ruling de novo. *Id*.

## DISCUSSION

Routine traffic stops are analogous to investigative detentions and are governed by *Terry v. Ohio*, 392 U.S. 1 (1968). *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely filed); *King v. State*, 35 S.W.3d 740, 742 (Tex. App.—Houston [1st Dist.] 2000, no pet.). A *Terry* analysis has two prongs. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). A court must first decide whether the officer's action was justified at its inception. *Id*. Here, Hasty does not challenge Officer Kelley's initial stop of her for an equipment violation. Therefore, we must focus on the second prong of *Terry* — whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. *Id*.

In deciding whether the scope of a *Terry* detention is "reasonable," the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop. *Id*. Reasonableness is measured in objective terms by examining the totality of the circumstances. *Parker v.* State, 297 S.W.3d 803, 809 (Tex. App.—Eastland 2009, pet. ref'd).

On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information. *Kothe*, 152 S.W.3d at 63, *Parker*, 297 S.W.3d at 809. After this computer check is completed, and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen, the traffic-stop investigation is fully resolved. *Kothe*, 152 S.W.3d at 63-64. It is at this point that the detention must end and the driver must be permitted to leave. *Id*. at 64.

When the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App.

-4-

1997); *Parker*, 297 S.W.3d at 810. Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that the person is violating the law. *Parker*, 297 S.W.3d at 810. Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Davis*, 947 S.W.2d at 244; *Parker*, 297 S.W.3d at 810.

Officer Kelley testified that when he approached Hasty in her vehicle after making the stop, he observed that Hasty had bloodshot eyes. The stop was made around 12:30 a.m., and Officer Kelley testified that the local bars close at midnight. Officer Kelley stated that he completed a warning citation for Hasty, and he then asked her to step out of the vehicle. Officer Kelley testified that Hasty "had an unsteady walk as she got out of the car and walked to the rear of the car." Officer Kelley told Hasty about the contents of the citation and asked her to sign the citation. Officer Kelley stated that he smelled "the slight odor of an alcoholic beverage emitting from [Hasty's] breath" as they were discussing the citation. In response to further questioning, Hasty informed Officer Kelley that she had been helping a friend close a bar that night and had consumed one beer. Officer Kelley then asked Hasty to perform standard field sobriety tests.

On cross-examination, Officer Kelley admitted that he knew that Hasty worked in the bar she helped close that night. Officer Kelley further admitted that he was in the bar earlier that evening to do a bar check approximately three hours before he stopped Hasty. Officer Kelley stated that he observed Hasty at the bar, and Hasty greeted him. Officer Kelley admitted that the only facts set forth in his probable cause affidavit in support of his arrest of Hasty were her bloodshot eyes and her

appearing unsteady on her feet. Officer Kelley stated that he had observed that Hasty's license plate light was not working two times earlier that night but had not stopped her. Officer Kelley did not observe anything unusual about Hasty's driving on any of the three occasions that he observed her driving that night. Officer Kelley admitted that Hasty's speech was not slurred. Officer Kelley described the area in which he stopped Hasty as being under construction. The roadway was being prepared to be paved, was rough, and had some gravel on it. Pictures of the roadway were admitted into evidence.

A videotape of the stop was introduced into evidence. Officer Kelley admitted that the location where Hasty's vehicle was stopped was not level. The videotape showed that Officer Kelley walked down and up an incline in between his vehicle and Hasty's vehicle. As Officer Kelley was waiting for the dispatch to check Hasty's license information, Officer Kelley speculated aloud that her license was suspended, which was not true. When Officer Kelley returned to Hasty's car with the citation, he asked her to exit her car. In response to his reason for asking her to exit her car, Officer Kelley testified as follows:

> Q. There really is no reason for her to have to step out of that vehicle, is there?
> A. I do it because I — that's what I do at all my stops. Somebody can come around that curve there and could hit me.
> Q. All right. Let's proceed.
> (Playing video.)
> Q. (By [Defense Counsel]) Officer, there's quite a bit of distance right there, isn't there, even with her vehicle door open, isn't there.
> A. Yes, ma'am.
> Q. There's no reason you couldn't do the ticket right there?
> A. But I ask them to get out of the car.

Officer Kelley testified that Hasty was unsteady on her feet as she was coming around the car and going down an incline.

Hasty testified regarding the high-heel shoes she was wearing that night, and pictures of the shoes were introduced into evidence. Hasty also testified regarding the terrain in the area in which she was stopped, stating it was dark and difficult to get good footing.

Although Officer Kelley testified that he always asks the driver to exit during traffic stops for his safety, the videotape showed that Officer Kelley stood beside Hasty's car for almost one minute gathering information after the initial stop without asking her to exit the vehicle. After Hasty subsequently exited her car in response to Officer Kelley's request, only about one and one-half minutes elapsed during the time Officer Kelley spoke with her about the citation before she signed it. Officer Kelley testified that he "completed" the citation before he asked Hasty to exit her vehicle. The only two facts mentioned by Officer Kelley in his probable cause affidavit were Hasty being unsteady on her feet and having bloodshot eyes. The trial court expressly found that Hasty was not unsteady on her feet. Having reviewed the videotape of the stop in the light most favorable to the trial court's ruling, we conclude that the videotape supports the trial court's finding. Moreover, Officer Kelley admits that while he was talking with Hasty, she was not unsteady on her feet, and she had no trouble responding to his questions. Considering the totality of the circumstances, the observation of Hasty's bloodshot eyes and the smell of a "slight" odor of alcohol on Hasty's breath were not sufficiently specific articulable facts to support a reasonable suspicion that Hasty was driving while intoxicated. Therefore, requesting that Hasty perform field sobriety tests went beyond the scope of the stop and unreasonably prolonged the detention. *See St. George v. State*, 237 S.W.3d

720, 726-27 (Tex. Crim. App. 2007). As a result, the trial court did not err in granting the motion to suppress.

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH