**Opinion issued July 28, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00228-CR

————————————

**WILFORD NATHANIEL PETERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12CR2766**

---

## MEMORANDUM OPINION

A jury convicted Wilford Nathaniel Peterson of possession of a controlled

substance with intent to deliver.[1] He appeals the denial of his motion to suppress

evidence of a bag of cocaine found in his pocket during a traffic stop. In two

---

[1]     TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010).

issues, he challenges the trial court's conclusions that (1) the warrantless seizure of Peterson was constitutional because the officer reasonably suspected that Peterson turned without signaling[2] and (2) the warrantless search of Peterson was constitutional because Peterson consented. We affirm.

## Background

While on patrol one evening, Deputy J. Creech saw Peterson participating in a potential narcotics sale. He followed Peterson's car. According to Deputy Creech, Peterson made a right turn without signaling beforehand. Deputy Creech pulled over Peterson for failing to signal before turning, searched him, found a bag of cocaine, and arrested him.

Peterson moved to suppress evidence of the bag of cocaine, arguing that his warrantless detention and search were unconstitutional. *See* U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9. At the suppression hearing, Deputy Creech testified that he was patrolling "a high narcotic area" and "had received information that there was a subject over there dealing narcotics." He observed Peterson's car parked in the middle of the road. Peterson was in the driver's seat talking to another man standing beside the driver-side door. As Deputy Creech's patrol car approached, both men "split." Deputy Creech suspected "a possible narcotics deal."

---

[2]    TEX. TRANSP. CODE ANN. § 545.104 (West 2011).

Deputy Creech then testified that he "circled the block, came back around and took up a stationary position" with all of his car's lights off. Deputy Creech saw Peterson approach an intersection and stop at the stop sign. Peterson "sat there for a few seconds and then started to make a right-hand turn. During the middle of the turn . . . he turns his right-hand blinker on."

Deputy Creech stopped Peterson for failing to use his turn signal before turning. He asked Peterson to step out of the car; Peterson complied. According to Deputy Creech, he then asked for and received permission to search Peterson's person and car. Deputy Creech found a small baggie in Peterson's cargo shorts containing a white rock-like substance, which tested positive for cocaine.

Finally, Deputy Creech testified that his patrol car was fitted with a dashboard camera. The camera recorded the entire stop on DVD. The DVD was kept for 90 days, then reused in another dashboard camera. Deputy Creech testified that this is standard practice in his department. The footage of the traffic stop was recorded over and thus not available to the trial court.

Peterson also testified at the hearing, contradicting several parts of Deputy Creech's testimony. According to Peterson, Deputy Creech did not see a drug deal but rather merely observed him talking with a good friend. Peterson also insisted that he stopped at the stop sign, turned on his signal, and then turned. Finally, Peterson maintained that he did not consent to any search.

3

The trial court denied Peterson's motion to suppress. Subsequently, Peterson was convicted of possession of a controlled substance with intent to distribute. He timely appealed.

**Denial of Motion to Suppress**

**A.    Standard of review**

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

"We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement." *Dixon*, 206 S.W.3d at 590. "Furthermore, when the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). "We give almost total deference to a trial court's express or implied determination of historical facts and

review *de novo* the court's application of the law of search and seizure to those facts." *Dixon*, 206 S.W.3d at 590.

"To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden when, as here, he establishes "that a search or seizure occurred without a warrant." *Id.* "If this showing is made, then the burden shifts to the State . . . ." *Amador*, 275 S.W.3d at 878. The State's burden is "to establish that the search or seizure . . . was reasonable." *Ford*, 158 S.W.3d at 492.

**B.    Seizure**

In his first issue, Peterson contends that the record does not reasonably support the conclusion that Deputy Creech had reasonable suspicion to detain him.

"When the police conduct a warrantless search and seizure, the burden is on the State to show that the officer had reasonable suspicion to believe that an individual was violating the law." *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Reasonable suspicion must be based on "specific, articulable facts that, when combined with rational inferences from those facts, would lead [a police officer] to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.*

Here, Deputy Creech pulled Peterson over for failing to signal before turning, a violation of Section 545.104 of the Texas Transportation Code. The relevant segment of that statute reads:

> (a) An operator shall use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position.

> (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX. TRANSP. CODE ANN. § 545.104 (West 2011).

At the suppression hearing, Deputy Creech testified that he watched Peterson approach an intersection, stop, and begin to turn without signaling. According to Deputy Creech, Peterson only signaled after beginning to turn. Deputy Creech averred that this gave him reasonable suspicion to detain Peterson.

Peterson argues that Deputy Creech provided no objective facts that would allow the trial court to conclude that his suspicion was reasonable. He relies on *Ford*, a Court of Criminal Appeals decision. *See* 158 S.W.3d at 493–94. There, a police officer detained the defendant on suspicion of driving too closely to the car ahead of him.[3] *Id.* at 490–91. At the suppression hearing, the officer "only stated that Ford was 'following too close.'" *Id.* at 493. The Court held that, while the trial court could have concluded that the officer genuinely suspected that Ford broke the

---

[3]    TEX. TRANSP. CODE ANN. § 545.062(a) (West 2011).

law, "without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable." *Id.* "Because the record fails to reveal any objective facts, we hold that the trial court erred in denying Ford's motion to suppress." *Id.* at 494.

But *Ford* does not apply when a police officer supplies specific, articulable facts. *Amador*, 275 S.W.3d at 879. Similarly, it does not apply when an officer can objectively determine whether a particular person has violated a criminal statute. *Castro*, 227 S.W.3d at 742. One example is when a police officer observes a motorist fail to signal a lane change.[4] *Id.* As the *Castro* Court explained,

> Probable cause can be established by objective facts or subjective opinions. In the case of subjective opinions, we follow our holding in *Ford*, that the officer must give specific, articulable observations to support his opinion. . . . However, in cases involving offenses such as failure to signal a lane change, a court can determine whether an officer's determination that a driver committed a traffic violation was objectively reasonable without being presented with a detailed account of the officer's observations. We agree with *Ford* that opinions are not an effective substitute for specific, articulable facts in a reasonable-suspicion analysis when the nature of the offense requires an officer to make a subjective determination. Following too closely, speeding, and being intoxicated, can be examples of such subjective determinations. Failure to signal a lane change is not.

*Id.*

We find no meaningful distinction between failing to signal a lane change and failing to signal a turn. *See Hippolite v. State*, No. 01-09-00569-CR, 2010 WL

---

[4]    TEX. TRANSP. CODE ANN. § 545.104(a).

2133887, at *3 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.) (mem. op., not designated for publication) (affirming constitutionality of warrantless turning-without-signaling traffic stop when officer saw defendant turn without signaling). The same statute proscribes both offenses. TEX. TRANSP. CODE ANN. § 545.104(a). For both, a reasonable suspicion of a violation is not a subjective determination—either an officer sees a turn signal, or he does not.

Thus, "[t]he determination of whether a driver signaled . . . is a simple one. The only two possibilities in this case are: either the trial judge believed [that a police officer observed the defendant failing to signal when required], or the trial judge did not believe that the driver was observed . . . without signaling." *Castro*, 227 S.W.3d at 742. When the trial court denies a motion to suppress, "it is clear that the judge believed the testimony that was presented." *Id.* at 742–43. We defer to that credibility determination and conclude that the trial court did not abuse its discretion. *See Ross*, 32 S.W.3d at 855–56.

Peterson also argues that the statute does not apply here because the intersection in this case has a stop sign and it is undisputed that Peterson came to a complete stop before turning. Because Section 545.104(b) requires signaling at least 100 feet before turning, he argues that the statute does not apply to intersections with stop signs or when a car starts moving less than 100 feet from an intersection. TEX. TRANSP. CODE ANN. § 545.104(b). He cites no cases supporting

8

this argument. Several Texas courts have rejected it. *Taylor v. State*, No. 14-12-01041-CR, 2014 WL 1713895, at *1 n.1 (Tex. App.—Houston [14th Dist.] Apr. 29, 2014, pet. ref'd) (mem. op., not designated for publication); *Lee v. State*, No. 06-07-00032-CR, 2007 WL 2274937, at *2–3 (Tex. App.—Texarkana Aug. 10, 2007, pet. ref'd) (mem. op., not designated for publication); *Robinson v. State*, No. 03-15-00098-CR, 2015 WL 3941579, at *2 (Tex. App.—Austin June 25, 2015, no. pet. h.) (mem. op., not designated for publication). Nevertheless, the issue before us is not whether Peterson actually violated Section 545.104 but rather whether the trial court abused its discretion when in implicitly found that Deputy Creech reasonably suspected a violation. *See Burkett v. State*, No. 10-13-00309-CR, 2014 WL 3556663, at *2 (Tex. App.—Waco July 17, 2014, no pet.) (mem. op., not designated for publication) (affirming reasonable suspicion for turning-without-signaling traffic stop when total distance car travelled to intersection was less than 100 feet without determining whether that fact precluded commission of offense).

Finally, Peterson notes that he testified that he signaled after reaching the stop sign but before turning, contradicting Deputy Creech's testimony that he only signaled after beginning to turn. We are not convinced that this distinction matters, given that at least two of our sister courts have concluded that signaling after reaching a stop sign but before turning still violates the statute. *Taylor*, 2014 WL 1713895, at *1 n.1; *Lee*, 2007 WL 2274937, at *2–3. Nevertheless Peterson

contends that we should disregard the Deputy Creech's testimony in favor of his. But that is not our role. "In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Ross*, 32 S.W.3d at 855. Accordingly, we defer to the trial court's implicit finding that Deputy Creech was credible. *See id.* at 855–56.

We overrule Peterson's first issue.

## C.     Search

In his second issue, Peterson contends that the State "failed to show specific, articulable facts that a consensual search had been conducted" because it lost the dashboard-camera video of the search and seizure.

When we review a motion to suppress, "any application of law to fact questions that turn on an evaluation of credibility and demeanor are viewed in the light most favorable to the trial court's ruling." *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). Deputy Creech testified that Peterson gave verbal consent to be searched. Peterson testified that he did not give consent. Whether consent was actually given, then, is a matter of witness credibility. We infer that, despite the missing video, the trial court found Deputy Creech to be more credible that Peterson, and we defer to that finding. *See Ross*, 32 S.W.3d at 855–56. When a person voluntarily consents to a search, the search is constitutional. *Meekins v.*

10

*State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). Accordingly, the trial court did not abuse its discretion in determining that the search was constitutional.

We overrule Peterson's second issue.

## Conclusion

We affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).