Affirmed and Memorandum Opinion filed November 2, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00732-CR

___________________

 

Rodolfo Paredes, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 209th District Court

Harris County,
Texas



Trial Court Cause No. 1067972

 



 

 

MEMORANDUM OPINION

            Appellant Rodolfo Paredes was convicted of murder and
sentenced to fifty years’ confinement. In two issues, he challenges the
sufficiency of the evidence and the trial court’s denial of a motion to
suppress. We affirm.

BACKGROUND

On the evening of May 6,
2006, three men were shot outside a Houston apartment complex. Henry Sierra
suffered a single gunshot wound to the leg, and Guillermo Cisneros was shot in
the back and buttocks; both men survived. Complainant Rocky Sanchez suffered
fatal injuries. According to the medical examiner, Sanchez died from a bullet
that entered beneath the right cheek and exited through the first cervical
vertebra, causing laceration to a major artery that supplies blood to the
brain. The medical examiner also found entrance wounds in Sanchez’s buttocks
and leg, including one bullet fragment lodged in Sanchez’s right foot.

Based on interviews
conducted shortly after the shooting, Officer Mike Miller of the Houston Police
Department determined that multiple shooters were likely involved. Among them,
he could specifically name appellant as a possible suspect. Officer Miller developed
a photo spread with six pictures of similarly-featured individuals, including one
of appellant, and presented it to Sierra and another witness, Jose Trevino.
Both Sierra and Trevino identified appellant as one of three men they had seen
at the shooting. Trevino also told Officer Miller that appellant was holding a
gun seconds before the shooting began.

The police secured a
warrant and arrested appellant on May 8, 2006. Appellant consented to a search
of his apartment, where police discovered a 9-millimeter gun. Appellant
identified the weapon as his own.

Appellant was taken to
police headquarters, where he was advised of his Miranda rights and
interrogated by Sergeant John Belk. During the interrogation, appellant stated
that he loaned his 9-millimeter gun to a man he could only identify as “Cesar.”
Appellant claimed that Cesar needed the gun to “talk with some guys.” Appellant
also admitted to accompanying Cesar and one other man to the scene of the
crime, but appellant denied any further role in the shooting. Prior to trial,
appellant moved to suppress a video recording of the interrogation, arguing
that it was obtained in violation of his constitutional rights. The trial court
denied appellant’s motion and the recording was later published for the jury’s
consideration.

At trial, Sierra and
Cisneros testified that they had joined the complainant in the parking lot of
his apartment complex on the night of the shooting. Both witnesses identified
appellant as one of three males who entered the parking lot at around 11:00 p.m. Sierra and Cisneros testified that they and the complainant were unarmed and
that shots were fired at them from the direction of the three males. Because
both men ran for cover, Sierra and Cisneros could not positively identify which
of the three males was firing. However, Sierra did testify that appellant
nodded his head just before the shooting began, as though giving a signal to
the other men in his party. Cisneros also testified that he heard “a lot of
gunfire” and believed there was more than one shooter.

Officer Miller
testified, without objection, that Trevino had witnessed appellant with a gun. According
to Sergeant Belk, both Sierra and Cisneros had also reported seeing appellant
with a weapon. Mike Lyons, the State’s firearms examiner, presented additional testimony
regarding the multiple cartridge casings recovered from the scene. Based on
their various markings, Lyons determined that the casings were fired from at
least three separate weapons: two 9-millimeter guns and one .45-caliber gun.
Lyons testified that at least seven of the casings were fired from the
9-millimeter gun found in appellant’s apartment. Lyons could not, however,
match the same gun to the bullet fragment recovered from the complainant’s
foot. The fragment had a grain weight higher than bullets manufactured for
9-millimeter guns; Lyons testified that the fragment was more consistent with a
.45-caliber bullet instead.

After being instructed
on the law of parties, the jury found appellant guilty of murder and sentenced
him to fifty years in prison. Appellant now contends that the evidence is
factually insufficient to support his conviction. He also contends that the
trial court erroneously denied his motion to suppress.

DISCUSSION

A.   
Evidentiary Sufficiency

In his first issue,
appellant directs us to several passages from the record and contends the
evidence was either too weak to support his conviction or against the great
weight and preponderance of conflicting evidence. Appellant asks that we remand
for a new trial on grounds of factual insufficiency, but since this case was
submitted, the court of criminal appeals has abrogated our factual-sufficiency
jurisdiction. See Brooks v. State, No. PD-0210-09, 2010 WL
3894613, at *14 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion) (overruling Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996)); id. at *22
(Cochran, J., concurring). Accordingly, we will not reach the merits of appellant’s
initial arguments. Because “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense,” we will instead construe appellant’s first issue as a
challenge to the legal sufficiency of the evidence. Id. at *1 (plurality
opinion).

In a legal-sufficiency
review, we examine all of the evidence in the light most favorable to the
verdict to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 433 U.S. 307, 319 (1979). Although we consider everything
presented at trial, we do not reevaluate the weight and credibility of the evidence
and substitute our judgment for that of the fact finder. Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge
of the credibility of witnesses and of the weight to be given their testimony,
any conflicts or inconsistencies in the evidence are resolved in favor of the
verdict. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).
Our review includes both properly and improperly admitted evidence. Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both
direct and circumstantial evidence, as well as any reasonable inferences that
may be drawn from the evidence. Id.

The jury charge
authorized appellant’s conviction on two theories of murder; namely, for being the
principal or a party to the offense. A person is criminally responsible as a
party if, acting with the intent to promote or assist the commission of
another’s offense, he solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense. Tex.
Penal Code § 7.02(a)(2) (Vernon 2003). Because the jury could
convict appellant under alternative theories, we will uphold the verdict if the
evidence is sufficient under either one. Sorto v. State, 173 S.W.3d 469,
472 (Tex. Crim. App. 2005).

By our review, the
record contains ample evidentiary support to sustain appellant’s conviction
under the law of parties. “In determining whether the accused participated as a
party, the court may look to events occurring before, during and after the
commission of the offense, and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act.” Cordova v. State,
698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Appellant admitted that he was
present at the shooting. In the interrogation video, he stated that he
accompanied Cesar and one other man to the parking lot after loaning Cesar a
gun. While presence alone is not enough to support a conviction, the evidence
was such that the jury could have reasonably concluded appellant played more
than just a passive role in the shooting. See Beardsley v. State, 738
S.W.2d 681, 685 (Tex. Crim. App. 1987) (“[M]ere presence at the scene of the
crime is insufficient to prove that a person is a party to the
crime . . . .”). For example, Cisneros testified that he
heard “a lot of gunfire,” as though more than one person was shooting. Officer
Miller and Sergeant Belk both testified that several witnesses had seen
appellant carrying a gun before the shooting began. Mike Lyons testified that
at least three guns had been discharged, and at least seven of the recovered
cartridge casings had been fired from the 9-millimeter gun found in appellant’s
apartment. Even if another person were responsible for those shots, Sierra
testified that appellant gave a head nod just before the shooting started, as
if signaling to the other men in his party to begin firing. The jury could have
concluded that appellant’s gesturing was evidence of “an understanding and
common design” to commit murder, and thus, that appellant aided or assisted
another party in the offense. See Tex.
Penal Code §§ 6.03(b), 19.02(b); Cordova, 398 S.W.2d at 111.

Viewing all of the
evidence in the light most favorable to the verdict, we conclude that the
evidence was sufficient to convict appellant under the law of parties. Despite
appellant’s correct observation that the
State failed to prove he fired the fatal shot, the jury did not require direct
evidence that appellant killed the complainant. Rabbani v. State, 847
S.W.2d 555, 558 (Tex. Crim. App. 1992). Therefore, we do not consider whether the
evidence was also sufficient to convict appellant as a principal. See Sorto,
173 S.W.3d at 472. Appellant’s first issue is overruled.

B.    
Motion to Suppress

In his second issue,
appellant challenges the trial court’s denial of his motion to suppress. The
focus of appellant’s motion was the video recording of his custodial
interrogation with Sergeant Belk. Under article 38.22 of the Code of Criminal Procedure,
an electronic recording of an interrogation may not be introduced into evidence
unless the accused is warned of his Miranda rights and unless he
knowingly, intelligently, and voluntarily waives those rights. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)
(Vernon 2005); Miranda v. Arizona, 384 U.S. 436, 444, 474–75 (1966).
Appellant argues that the trial court should have suppressed the recording
because he invoked his right to silence at the beginning of the interview and
he did not otherwise waive his Fifth Amendment rights. 

When determining whether
evidence should have been suppressed, we review the trial court’s ruling for an
abuse of discretion. Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. App.
1991). A trial court abuses its discretion if it acts unreasonably,
arbitrarily, or without reference to any guiding rules and principles. Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991). If supported
by the record, the trial court’s ruling will not be overturned. Amador v.
State, 275 S.W.3d 872, 878–79 (Tex. Crim. App. 2009). The trial court is
the sole trier of fact at a suppression hearing, and so we afford almost total
deference to its express or implied determinations of historical fact,
especially when those findings turn on the credibility and demeanor of
witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
When the trial court has not made specific findings of fact, as in this case,
we review the evidence in the light most favorable to the trial court’s ruling.
Neal v. State, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). Furthermore,
we review de novo the trial court’s application of law to any facts not based
on an evaluation of credibility and demeanor. Id.

1.     
Whether Appellant Invoked His Fifth Amendment Rights

Appellant contends he
attempted to cut off questioning at the beginning of the interview, thereby
making unlawful the entirety of his custodial interrogation. See Miranda,
384 U.S. at 473–74 (“If the individual indicates in any manner, at any time
prior to or during questioning, that he wishes to remain silent, the
interrogation must cease.”). In his brief, appellant argues that he invoked his
right to remain silent by telling Sergeant Belk, the interrogating officer,
“Hey man. I don’t want to give nothing about nothing.” Appellant misstates what
was actually communicated. Upon our review of the recording, the interrogation started
more precisely as follows:

Sgt. Belk:       Well,
let’s, uh, start from the beginning and we’ll talk about what happened and see
who all these people are.

Appellant:     Hey
man. . . . (sigh) I don’t want to give nothing involved in
that [expletive]. You know, I didn’t do nothing.

Sergeant
Belk then advised appellant that (1) he had the right to remain silent; (2) anything
he said could be used as evidence against him at trial; (3) he had a right
to counsel during questioning; (4) the State would appoint counsel if he
were unable to employ one himself; and (5) he could terminate the interview
at any time. Sergeant Belk asked appellant five times if he understood his
rights, once after each warning. In each instance, appellant responded in the
affirmative.

            An
interrogating officer has no obligation to end his questioning unless the
suspect unambiguously invokes his Fifth Amendment rights. Ramos v. State,
245 S.W.3d 410, 418 (Tex. Crim. App. 2008). Moreover, the officer is not required
to clarify any ambiguous remarks. Id. A suspect in custody need not,
however, invoke his rights formally or with any particular phraseology; any
comment or action by the suspect that can reasonably be construed as a desire
to invoke his rights is sufficient to end the interrogation. Watson v. State,
762 S.W.2d 591, 598 (Tex. Crim. App. 1988). In this case, the trial court
concluded that appellant fell short of clearly invoking his rights. Given the
context of appellant’s comment, we cannot find an abuse of discretion. Because appellant’s
objection to being “involved in that [expletive]” was given with a
contemporaneous profession of innocence, his comment simply indicates a desire
to be excluded as a murder suspect—not an intent to terminate the interview. Indeed,
when appellant further elaborated on his version of the shooting, he reasserted
his innocence with similar phrasing: “I was not. . . . First,
you know, I didn’t kill nobody. I didn’t use no gun. I just don’t want to get
none of that [expletive], you know?” Viewing the evidence in the light most
favorable to the trial court’s ruling, we cannot conclude that the trial court acted
unreasonably or arbitrarily.

2.     
Whether Appellant Waived His Fifth Amendment Rights

After advising appellant
of his Miranda warnings, Sergeant Belk made the following request: 

Okay, now that I’ve read you your rights and you understand
all your rights, are you willing to waive those rights and tell me just exactly
what happened out there on Saturday night about Cesar and his friend and how
you weren’t involved in the shooting, but you were there? Just tell me the
whole story about what happened.

Although
appellant answered with his own account of the shooting, appellant argues that he
could not have waived his rights because Sergeant Belk’s request was
“convoluted” and appellant did not explicitly agree to waiver.

            Appellant’s
argument is without merit. The test for waiver turns on neither the tidiness of
the interlocutor’s request nor the explicitness of the suspect’s response. Joseph
v. State, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010); see also North
Carolina v. Butler, 441 U.S. 369, 373 (1979) (“[I]n at least some cases
waiver can be clearly inferred from the actions and words of the person
interrogated.”). A defendant only waives his rights if the totality of the
circumstances reveals that the waiver was voluntary and made in full awareness
of both the nature of the right being abandoned and the consequences of the
decision to abandon it. Joseph, 309 S.W.3d at 25. By our review,
appellant knowingly, intelligently, and voluntarily waived his rights.

The recording does not suggest
that appellant’s statements were in any way coerced. Sergeant Belk was calm
throughout the duration of the interrogation, making no threats. At the hearing
on the motion to suppress, Sergeant Belk testified that he did not promise any
deal in return for appellant’s cooperation. Sergeant Belk also mentioned that
appellant was allowed to eat and use the restroom during the interrogation. At
no time during the approximately thirty-five minute interrogation did appellant
make any request for an attorney or that the interview be stopped. Instead,
appellant offered his own version of the incident, insisting repeatedly that he
was present at the shooting but not the killer. As such, the record supports a
finding that “the waiver resulted from a free and deliberate choice without
intimidation, coercion, or deception.” Id. at 26.

The recording also shows
that appellant was fully aware of the nature and consequences of his waived
rights. Sergeant Belk read five warnings to appellant. When asked if he understood
each of them, appellant responded affirmatively either by nodding his head or
by giving a verbal statement such as “Yes, sir,” or “Mm-hmm.” During the
suppression hearing, Sergeant Belk testified that appellant did not appear to
be under the duress of any type of drugs or alcohol. We find no reason to
question the trial court’s exercise of discretion.

Based on the totality of
the circumstances, we conclude that the record supports the trial court’s
finding that appellant waived his rights in accordance with Miranda and
article 38.22. Therefore, the trial court did not err by denying appellant’s
motion to suppress and by admitting the videotaped statement into evidence.[1] Appellant’s second
issue is overruled.

CONCLUSION

In two issues, appellant
claimed that the evidence was factually insufficient and that his motion to
suppress was improperly denied. Because of Brooks, we examined the
evidence under a legal-sufficiency standard instead, and viewing all the
evidence in the light most favorable to the verdict, we concluded the record
contained enough evidentiary support to permit a reasonable jury to convict
appellant as a party to murder. We also determined that appellant’s
interrogation was conducted within the strict limits of Miranda and
article 38.22; therefore, the trial court did not abuse its discretion in
denying the motion to suppress. With both of appellant’s issues overruled, we
accordingly affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore, Boyce, and
Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1] Because we find no error
in the admission of the videotaped interrogation, we do not reach the merits of
appellant’s arguments that he suffered harm.