**Brittini KRESSIN, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–15–00918–CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed April 27, 2017

---

Nicholas Mensch, Houston, TX, for Appellant.

Heather Hudson, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Donovan and Wise.

## OPINION

John Donovan, Justice

Appellant Brittini Kressin challenges her conviction for intoxication manslaughter on the sole ground that the trial court erred in denying her motion to suppress evidence of the first of two blood draws taken after a fatal freeway accident. Be-

cause the record evidence shows the challenged blood draw was taken pursuant to a valid warrant, we conclude the trial court did not abuse its discretion in refusing to suppress the evidence.

## BACKGROUND

Shortly after midnight appellant drove her car onto an exit ramp to the Katy Freeway. She hit another car while traveling the wrong direction. After striking the car, appellant continued to drive the wrong way on the freeway about another 1300 to 1400 feet before the car came to a stop. Witnesses saw sparks coming from appellant's car due to damage caused by the accident. One witness reported seeing appellant, after the accident, sitting in the car in the middle of the freeway. Appellant's car was pointing the wrong direction and she was trying to move the car. Two witnesses stopped, pulled appellant out of her car, and placed her in one of their cars for appellant's safety. The passenger in the back seat of the car appellant hit suffered severe internal injuries from the crash and died shortly after the accident. The other passengers were injured but did not go to the hospital.

Shortly after appellant was pulled from her car, German Arias, who was riding a motorcycle the right direction on the freeway, did not see appellant's disabled car due to smoke from the wreck. Arias struck appellant's car, was thrown from the motorcycle, and landed on the freeway on his back. He suffered severe injuries and was transported to a hospital.

Appellant was charged with intoxication manslaughter. Before trial appellant filed a written motion to suppress blood draw evidence and a written motion to suppress her oral statement made after the accident. In appellant's written motion to suppress the blood specimen, appellant argued that the blood evidence seized was ob-

tained without a valid search warrant. The trial court held a hearing outside the presence of the jury on both motions.

During the suppression hearing, Officer Salvador Corral, a member of the Houston Police Department Driving While Intoxicated Task Force, testified that he was dispatched to the scene of the accident. When he arrived he spoke with appellant and noticed she put off an odor of alcoholic beverage, and had bloodshot, droopy eyes. Corral moved appellant off of the freeway to a safe location and began the first portion of the investigation. At that time, appellant voluntarily agreed to talk with Corral and he heard appellant's slurred speech. Corral noticed no injuries on appellant. Appellant told Corral that she had been at a bar called Anvil, where she had consumed three drinks, the last one at 5:00 p.m. Appellant said she left Anvil to meet a friend at a restaurant. Appellant told Corral that she was at the restaurant until 7:30 p.m. When Corral asked where appellant was between 7:30 p.m. and midnight, appellant answered that she must have fallen asleep because she was drinking. Appellant had no memory of the accident, which occurred just after midnight.

Corral performed three standardized field sobriety tests on appellant, horizontal gaze nystagmus (HGN), walk-and-turn, and one-leg stand. Appellant failed the HGN and walk-and-turn tests, but passed the one-leg stand test. Corral also asked appellant to recite the alphabet from A to Z, and appellant was unable to correctly recite the alphabet. Corral then read the standard statutory warning that explains the consequences of refusing consent for a breath or blood sample. Appellant refused consent.

After appellant refused consent, Corral contacted the District Attorney's office and swore an affidavit for a search warrant. The search-warrant affidavit details the

facts surrounding Corral's encounter with appellant and appellant's performance on the sobriety-field tests. In the body of the affidavit Corral correctly notes that the accident occurred on October 15, 2013, but underneath Corral's signature, the affidavit reads, "Sworn to and Subscribed before me on this October 15, 2012, A.D. at 4:16 AM." The date on the jurat inaccurately reflects the year the accident happened as 2012 rather than 2013. The search warrant, signed by Judge Villareal, a magistrate in Harris County, states that it was signed on October 15, 2013, at 4:14 a.m. Corral explained that the incorrect year in the jurat was a computer glitch caused when filling out the template. The body of the affidavit contained the correct date. Corral also explained that Officer Roman, who witnessed Corral's signature, filled out the time that the affidavit was signed at 4:16. Judge Villareal filled out the time, 4:14, on the search warrant. The two-minute discrepancy was due to the individuals checking the time with different timepieces. According to Corral, he completed and signed the affidavit before the magistrate signed the search warrant. Corral testified that Judge Villareal administered an oath and that Corral swore in front of the magistrate that the facts in the affidavit were within his personal knowledge.

After obtaining the search warrant, Corral took appellant to the hospital, where an emergency room nurse drew appellant's blood at 4:31 a.m. and again at 5:04 a.m. Corral testified that both blood draws were done after he had received the search warrant. The purpose of taking the second blood draw was to show metabolization of alcohol.

On cross-examination, Corral testified:

Q. And you got two blood draws from that one warrant; is that—

A. No, sir. As I stipulated earlier, I did an exigent blood draw. And then 30 minutes later, the actual warrant was executed.

Q. Did the search warrant give you the authority to take an exigent blood draw?

A. No, sir. Texas Penal Code allowed me to take the exigent circumstance blood draw.

At the conclusion of the hearing, appellant argued that the search warrant was not valid because there was a mistake on the date and time. Appellant also argued that the warrant was invalid because Officer Roman did not "swear in" Corral before Corral signed the affidavit. The State argued that both blood draws were done pursuant to a valid search warrant, and that even if there were not a valid warrant, exigent circumstances justified taking appellant's blood. Appellant responded to the State's argument, that after *McNeely*,[1] the State must show the exigent circumstances. Appellant further argued, "This officer didn't feel like there were exigent circumstances, it appears, because he went to secure the warrant." The trial court denied the motion to suppress, stating:

The Court finds that the affidavit does set forth substantial facts establishing probable cause and that the substantive language contained in the affidavit correctly reflects the date at issue.

The Court further finds that the jurat containing the incorrect date was a mistake since the body of the affidavit correctly reflects the date.

The Court further finds that the affidavit has been properly sworn to by a peace officer. The motion to suppress is denied.

When Corral testified before the jury he said that he received the signed warrant from the magistrate and executed the war-

---

1. *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).

rant by taking appellant to the hospital, where an emergency-room nurse immediately took the first blood draw. Corral testified that in his opinion appellant had lost the normal use of her mental and physical faculties due to intoxication. Corral based his opinion on the totality of the information he gathered, including appellant's having driven the wrong way on the freeway as well as appellant's slurred speech, admission of drinking, inability to remember events within a certain timeframe, failure of the field sobriety tests, and the nature of the accident.

The emergency-room nurse who drew the blood testified that it is part of his duty to verify a warrant when he is requested to draw blood. The nurse testified that he verified the search warrant before drawing appellant's blood.

Dr. Matthew Cheney of the Houston Forensic Science Center testified that he tested the blood samples taken from appellant. According to Dr. Cheney, the first blood sample showed a result of .070 grams of ethanol per 100 milliliters of blood. The results of the second blood sample showed a result of .058 grams per 100 milliliters.[2]

At the conclusion of the trial, the jury found appellant guilty of intoxication manslaughter and assessed punishment at six years in prison.

## ANALYSIS

█ In a single issue, appellant contends that the trial court erred in failing to suppress evidence of appellant's first blood draw, which appellant contends was obtained without a warrant and without showing an exception to the warrant requirement.

█ This court reviews a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When reviewing the ruling on a suppression motion, we afford almost total deference to the trial court's determination of historical facts if supported by the record. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). Regardless of whether the judge granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *Woodard*, 341 S.W.3d at 410. We review de novo a trial court's application of the law of search and seizure to the facts. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case. *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013).

█ To comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation generally (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2014). "[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S.Ct. at 1568. In *Villareal*, the Texas Court of Criminal Appeals, citing *McNeely*, rejected the assertion that

---

**2.** Cheney's testing took place almost two years after the accident. Another analyst had tested the blood shortly after the accident. The analyst who originally tested the blood is no longer employed in Houston. Because the first analyst was unavailable to testify, Cheney retested the samples and testified to his analysis.

the dissipation of alcohol in the bloodstream constitutes a "recognized exigency" that would justify a warrantless blood draw. *Villarreal*, 475 S.W.3d at 795.

On appeal, appellant argues that the first blood draw was taken without a warrant in violation of the Fourth Amendment and that the State did not establish an exception to the warrant requirement. Appellant bases her argument on Corral's testimony that he did not take the first blood draw pursuant to a warrant, but did so due to exigent circumstances. The State does not dispute that Corral's explanation for the exigency—the dissipation of alcohol in the blood—is insufficient to establish exigent circumstances in this case. The State argues, and the record reflects, that both blood draws were taken pursuant to the search warrant.

The record shows that the first blood draw was taken after the search warrant was issued. Corral's testimony that the first draw was taken pursuant to exigent circumstances does not make evidence of the first blood draw inadmissible. The first blood draw was taken fifteen minutes after the search warrant was issued and appellant transported to the hospital for the blood draw.

▆▆▆ A defendant who alleges a search or seizure in violation of the Fourth Amendment or article I, section 9 of the Texas Constitution must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Id.* Once the defendant makes this showing, the State must prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.*

Appellant failed to establish that the initial blood draw was taken without a warrant. The chronology of events, as set forth in the record, shows that both blood draws followed the issuance of the warrant. The trial court was not bound by Corral's testimony that the first blood draw was taken without a warrant. The trial court was free to disregard that portion of Corral's testimony and, based on the other record evidence, the trial court reasonably could have determined that both blood draws were taken pursuant to a valid warrant. Appellant does not argue that the warrant authorized only a single blood draw. Nor could a reasonable reading of the warrant support that conclusion. The trial court's ruling that evidence of the blood draw was admissible is reasonably grounded in the record because the record reflects both blood draws were taken pursuant to a valid warrant.

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. *See Wade*, 422 S.W.3d at 666–67 (appellate court will uphold the trial court's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case). Accordingly, we overrule appellant's sole issue on appeal and affirm the trial court's judgment.