**Opinion filed August 23, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00222-CR

_____

## MICHELLE LEIGH LEINNEWEBER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause No. 2-1384-14**

## M E M O R A N D U M   O P I N I O N

The jury convicted Michelle Leigh Leinneweber of the Class A misdemeanor offense of driving while intoxicated; she had one prior conviction for driving while intoxicated.[1] The trial court assessed punishment at confinement for one year in jail and a fine of $1,000, but it suspended the imposition of Appellant's sentence and

---

[1]*See* TEX. PENAL CODE ANN. § 49.09(a) (West Supp. 2017).

placed her on community supervision for eighteen months. In two issues on appeal, Appellant complains of the denial of her motion to suppress and of the addition of jail time to the judgment. We affirm.

In her first issue, Appellant asserts that the trial court erred when it denied her motion to suppress the evidence in this case because (1) she was detained without reasonable suspicion and (2) she was arrested without probable cause. Appellant filed a motion to suppress, and the trial court conducted a pretrial hearing to address the motion. After evidence was presented, the trial court denied Appellant's motion.

Two witnesses testified at the hearing on Appellant's motion to suppress: Trooper Daniel White and Trooper Madeleno Lee Gonzales. Trooper White testified that Appellant showed up at the scene of a traffic stop in which another person, Brandi Perkins, was being arrested for driving while intoxicated. Appellant drove to the scene in her personal vehicle. Appellant pulled up behind Trooper White's patrol car, got out of her vehicle, approached Trooper White and Perkins, and said that Perkins was "not drunk" or was "fine." Trooper White testified that Appellant commenced to tell him how to do his job and that he asked her to leave. However, when Appellant turned to leave, Trooper White detected a "strong odor of an alcoholic beverage" coming from Appellant, and he then told her to stop and shined his flashlight on her. As he did, he noticed that her eyes were "glassy, glazed over, and red." Trooper White asked Appellant how much she had had to drink, and Appellant replied that she had had two Bud Light Limes. At that point, Trooper White instructed Appellant to go wait in front of his patrol car. He testified that he had a reasonable suspicion to detain her for driving while intoxicated.

Trooper Gonzales arrived shortly after Trooper White detained Appellant. Appellant kept interrupting Trooper White, was argumentative and belligerent, and said to Trooper White, "If you want to arrest me, then arrest me." Trooper White handcuffed Appellant at that time for her safety and for the officers' safety because

2

Appellant stepped toward him, gestured, and was "becoming very unruly." Trooper White testified that Appellant was not under arrest at that time. Trooper White then discussed the situation with Trooper Gonzales, who removed the handcuffs so that Appellant could perform the field sobriety tests. A dash-cam recording of Appellant performing the field sobriety tests was admitted into evidence at the hearing. Trooper Gonzales testified that Appellant exhibited all six clues during the horizontal gaze nystagmus test. She also failed the walk-and-turn test, the one-leg-stand test, and the counting test. Trooper Gonzales then arrested Appellant for driving while intoxicated.

There are three distinct types of interactions between law enforcement and citizens: (1) consensual encounters; (2) investigatory detentions, which are seizures of limited scope and duration and must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). All three types were involved in this case. The interaction began as a consensual encounter when Appellant drove up and approached Trooper White. However, the interaction quickly became an investigatory detention and, ultimately, an arrest.

A police officer may briefly detain a person to investigate possible criminal activity, even if there is no probable cause, if the officer has reasonable suspicion to believe there is possible criminal activity. *Id.* A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a person detained is, has been, or soon will be engaged in criminal activity. *Id.*; *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). The standard for reasonable suspicion is an objective one based upon the totality of the circumstances, not the subjective intent of the officer. *Wade*, 422 S.W.3d at 668.

The standard for probable cause is likewise objective and requires a consideration of the totality of the circumstances facing the arresting officer; the officer's subjective beliefs are not relevant to this test. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Because the arrest in this case was made without a warrant, the State had the burden to prove that the seizure was reasonable under the totality of the circumstances. *Id.* A warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause. *Id.* "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.* A finding of probable cause requires more than bare suspicion but less than would justify conviction. *Id.*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts if the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Id.* Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.* At a hearing on a motion to suppress, the trial court is the sole finder of fact and judge of the witnesses' credibility and, as such, may make reasonable inferences from the evidence presented. *Amador*, 275 S.W.3d at 878. We must uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Id.* at 878–79.

We hold that the record supports a finding that Trooper White had a reasonable suspicion, based upon Appellant's actions and the strong odor of alcohol,

to detain Appellant so that field sobriety tests could be conducted. *See State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011); *State v. Rudd*, 255 S.W.3d 293, 298 (Tex. App.—Waco 2008, pet. ref'd). During the investigative detention, Trooper White handcuffed Appellant temporarily for her safety and for officer safety. We disagree with Appellant's assertion that she was under arrest at this time. "[T]he use of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest." *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008). The evidence below supports a finding that Appellant was not arrested until after she performed the field sobriety tests. At that point, based upon the totality of the circumstances, the troopers had probable cause to arrest Appellant without a warrant. We overrule Appellant's first issue.

In her second issue, Appellant asserts that the trial court had no jurisdiction to amend the final judgment to add jail time. After Appellant had been sentenced in open court and the judgment had been signed, it came to the trial court's attention that a mandatory condition of community supervision had been omitted from the terms and conditions of community supervision that were contained in the judgment. By statute, if a trial court grants community supervision to a defendant convicted under Section 49.09(a) of the Penal Code (driving while intoxicated—second offense), the trial court "*shall require as a condition of community supervision* that the defendant submit to . . . not less than 72 hours of continuous confinement in county jail." TEX. CODE CRIM. PROC. ANN. art. 42A.401(a)(1) (West 2018) (emphasis added); *see* TEX. PENAL CODE ANN. § 49.09(a) (West Supp. 2017).

The trial court conducted a hearing on the matter and noted that the jail time was mandatory under the statute and that a community supervision order can be amended at any point. The trial court ruled that it was "simply" amending the community supervision order to "assess the minimum under the statute." Although the written order is styled "NUNC PRO TUNC CORRECTING Condition that was

left off of original Judgment," the trial court ruled in open court that "there's not a nunc pro tunc." It is apparent from the body of the written order and the trial court's ruling in open court that the trial court merely amended the terms of Appellant's community supervision to add the 72-hour provision in compliance with Article 42A.401(a)(1). Confinement imposed as a condition of community supervision is not part of a defendant's "sentence." *Speth v. State*, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999); *Martinez v. State*, 427 S.W.3d 496, 498–500 (Tex. App.—San Antonio 2014, no pet.). The trial court here did not in any way attempt to alter the sentence that had previously been pronounced in open court—one year in jail, probated for eighteen months, plus a fine of $1,000.

Pursuant to the Texas Code of Criminal Procedure, the trial court may, at any time during the period of community supervision, "modify the conditions of community supervision." CRIM. PROC. art. 42A.051(b). That is precisely what the trial court did here; thus, the trial court did not act outside the scope of its jurisdiction when it modified the conditions of Appellant's community supervision. We overrule Appellant's second issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT

August 23, 2018                                                    SENIOR CHIEF JUSTICE

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.