

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00043-CR

MICHAEL LYNN THOMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 16-0313X

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# M E M O R A N D U M   O P I N I O N

Julius Cox called the police after he saw that a truck, driven by Michael Lynn Thompson, had backed into his mailbox and driven away. Eric Nieves, a trooper with the Texas Department of Public Safety, was dispatched to investigate the call, and he spoke with Cox. Nieves quickly found the truck, with Thompson behind the wheel, parked in a nearby driveway. Seeing several signs that Thompson was intoxicated, Nieves arrested him on suspicion of driving while intoxicated (DWI) and drove him to Good Shepherd Medical Center where his blood was drawn. A laboratory analysis revealed Thompson's blood to contain 0.274 grams of alcohol per 100 milliliters of blood, more than three times the legal limit. Thompson was charged with DWI, third or more. A Harrison County jury found him guilty, and he was sentenced to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 49.09(b) (West Supp. 2016).

On appeal, Thompson contends that (1) the trial judge lacked the authority to preside over the trial, (2) the trial court erred in denying his motion to suppress the evidence seized as a result of his warrantless arrest, and (3) the trial court erred by restricting his voir dire of the jury panel.

We affirm the trial court's judgment because (1) the County Court at Law of Harrison County had authority to try Thompson's case, (2) the officer had probable cause to arrest Thompson without a warrant, and (3) the trial court was within its discretion to deny additional time for voir dire.

**I.     The Trial Judge Had the Authority to Preside Over Thompson's Jury Trial**

In his first point of error, Thompson contends that because the record is silent as to how the judge of the County Court at Law of Harrison County came to preside over this trial in the 71st Judicial District Court, the trial judge lacked "the power to preside over the jury trial."

Thompson's indictment was presented to the 71st Judicial District Court of Harrison County; pretrial matters, such as Thompson's motion to suppress and the State's motion for a continuance, were heard by the Honorable Brad Morin, judge of the 71st Judicial District Court. However, the case proceeded to jury trial before the judge of the County Court at Law of Harrison County, the Honorable Joe Black, apparently sitting for the 71st Judicial District Court. The charge of the court, the verdict form, and the punishment instructions are all signed by Judge Black. The judgment of conviction emanated from the 71st Judicial District Court of Harrison County, but was also signed by Judge Black.

To the extent Thompson takes issue with the authority of the judge of the County Court at Law of Harrison County to sit for the 71st Judicial District Court, we find no error. The County Court at Law of Harrison County has concurrent jurisdiction with the 71st Judicial District Court in felony cases other than capital murder cases. TEX. GOV'T CODE ANN. § 25.1042(a)(2) (West Supp. 2016). In matters of concurrent jurisdiction, the judge of the county court at law may be assigned a felony case, other than a capital murder case, by the 71st Judicial District Court. TEX. GOV'T CODE ANN. § 25.1042(b) (West Supp. 2016). In any event, Thompson failed to object to

3

the exchange of benches in this case, so any complaint regarding the lack of an assignment authorizing the exchange has not been preserved for our review.[1]

## II.    The Trial Court Did Not Err in Denying Thompson's Motions to Suppress

In his second point of error, Thompson argues that the trial court erred in denying his motions to suppress the evidence seized as a result of his arrest because the officer lacked probable cause to arrest him.[2]

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor, while reviewing de novo other application-of-law-to-fact issues. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions (also known as mixed questions of law and fact) if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts review mixed questions of law and fact not falling within this category on a de novo basis. *Id*. We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

---

[1]We are not presented with any issue concerning a lack of jurisdiction of the convicting court. Instead, any alleged error involves statutory procedure. *See Thull v. State*, 963 S.W.2d 879, 881 (Tex. App.—Texarkana 1998, no pet.) (citing *Davis v. State*, 956 S.W.2d 555, 557–58 (Tex. Crim. App. 1997)); *see also Johnson v. State*, 869 S.W.2d 347, 349 n.5 (Tex. Crim. App. 1994).

[2]Thompson's one-sentence summary of the argument also maintained that the officer lacked a reasonable basis for stopping and detaining Thompson, but the substantive argument and the authorities cited in this point of error focus solely on whether the officer had probable cause to arrest Thompson.

A warrantless arrest is "unreasonable *per se* unless the arrest fits into one of a 'few specifically defined and well delineated exceptions.'" *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). A law enforcement officer may arrest a person without a warrant only if probable cause exists with respect to that person and the arrest falls within one of the exceptions set out in Article 14.01 of the Texas Code of Criminal Procedure. *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim. App. 1987). An officer has probable cause to make a warrantless arrest "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Guzman*, 955 S.W.2d at 87. "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

Nieves was the only witness to testify during the suppression hearing. Nieves was dispatched to investigate a call that a possibly intoxicated driver had backed a truck into a mailbox. The caller, Cox, described the suspect's vehicle as a maroon and silver truck with a Texas license plate with a possible plate number of GMZ 2411. The caller identified Thompson as the possible driver. When Nieves arrived at the Cox residence, he spoke with Cox and their interaction was recorded by Nieves' dash camera. The dash camera recording was admitted into evidence and

5

played for the court. The recording captures the complainant telling Nieves that he saw the truck, driven by Thompson, hit his mailbox and drive away. As Nieves was about to leave, he saw a truck matching the description drive by, and he tried to catch up to it in order to continue his investigation.

When Nieves caught up to the truck, it was running, but parked in a driveway with Thompson sitting behind the wheel. The truck had a Texas license plate, number GMZ 2459. He believed the truck was the same one involved in damaging the mailbox. Nieves told Thompson, "[W]e got a call that you hit the mailbox over there at [Cox's] house." Thompson responded, "[Y]es," but Nieves also told him that he "heard that [Thompson] had been drinking." Thompson denied having drunk anything, but Nieves noticed that Thompson "seemed very confused," he had a "little bit" of trouble with his balance, his speech was slurred, "he had red glassy watery eyes," and "his breath and/or person" smelled strongly of alcohol.

Nieves administered a divided attention field sobriety test (the finger count), but Thompson failed it. Nieves tried to administer the Horizontal-Gaze Nystagmus Test, but he could not complete it because Thompson kept turning his head and would not follow Nieves' finger with only his eyes. Nieves did not have Thompson perform the walk-and-turn test or the one-leg stand test because Thompson "was not wearing shoes and the way he was acting and speaking [Nieves] didn't feel comfortable putting him in a position where he could fall and hurt himself." When questioned by Nieves, some of Thompson's responses were "down right incoherent." Based on the foregoing, Nieves believed that Thompson had been driving while intoxicated, and he placed Thompson under arrest.

Here, based on the facts and circumstances within Nieves' knowledge, a reasonably prudent person would believe that Thompson had committed or was committing the offense of driving while intoxicated. *See Amador*, 275 S.W.3d at 878. Cox told Nieves that Thompson was driving the truck that hit his mailbox, and Thompson's truck matched the description given by Cox. While Nieves was still at the Cox residence, the truck drove by the house. Nieves testified that when he pulled up behind the parked truck, it was still running and Thompson was behind the wheel. Therefore, it was reasonable to infer that Thompson had been driving the truck. When Nieves approached and spoke with Thompson, he exhibited several signs of intoxication and either failed or could not complete the field sobriety tests Nieves administered to him. Therefore, we find that the trial court did not err in denying Thompson's motion to suppress, and we overrule this point of error.

## III.    The Trial Court Was Within its Discretion to Limit Thompson's Voir Dire

In his final point of error, Thompson argues that the trial court abused its discretion by limiting the duration of his voir dire examination of the jury panel.

A trial court has broad discretion over the voir dire process, including setting reasonable limits and determining the propriety of a particular question. *Samaripas v. State*, 454 S.W.3d 1, 5 (Tex. Crim. App. 2014). A defendant's right to question jurors in order to intelligently and effectively exercise peremptory challenges and challenges for cause must be harmonized with the right of the trial court to impose reasonable restrictions on the exercise of voir dire examination. *McCarter v. State*, 837 S.W.2d 117, 119–20 (Tex. Crim. App. 1992). When a defendant complains of an inability to question the venire collectively, we apply a two-prong test: (1) whether the

7

defendant attempted to prolong the voir dire by asking questions that were irrelevant, immaterial, or unnecessarily repetitious and (2) whether the questions the defendant was not permitted to ask were proper voir dire questions. *Id.* at 120 (citing *De La Rosa v. State*, 414 S.W.2d 668, 670–71 (Tex. Crim. App. 1967)). Part of this analysis is whether counsel appropriately budgeted the time allotted for voir dire. *Whitaker v. State*, 653 S.W.2d 781 (Tex. Crim. App. 1983).

Here, the State and the defense each requested thirty-five minutes for voir dire, and the trial court granted their requests. During his voir dire, the trial court advised Thompson's counsel when she had seven, five, and one minute remaining. Through voir dire, Thompson covered several subjects with the venire panel, including (but not limited to) (1) bias or prejudice regarding DWI charges, (2) their ability to be fair and impartial in light of their personal experiences, (3) their feelings toward and experience with sobriety tests, (4) their opinions regarding a defendant's Fifth Amendment right against self-incrimination, (5) the meaning of reasonable doubt, (6) whether the members of the panel believed that being arrested means someone is likely guilty, and (7) their feelings regarding Mothers Against Drunk Driving.

When the trial court informed Thompson's counsel that she was out of time, she requested more time, and the trial court agreed to give her "two more minutes and that's it." Counsel asked whether anyone had "such a problem with alcohol that they would not be a fair and impartial juror," as well as follow-up questions to two potential jurors. Before her next question could be answered, the following exchange took place:

(Bench conference out of the hearing of the venire panel.)

THE COURT: I've given you two-and-a-half minutes. You've still only asked two questions.

8

[Counsel for Thompson]: I have 188 questions.

THE COURT: You're not going to ask them. I'm going to allow you to ask a punishment question at this point and that's it. Only ask the question and get responses. It's not an ongoing discussion at this point. I've given you almost 40 minutes for voir dire. So ask your punishment question only and you will sit down. Let's go.

(Back in the hearing of the venire panel.)

[Counsel for Thompson]: The law doesn't require that you arrive at a verdict, only that you make a good faith effort to do so.
So if after prolonged deliberations, some of you have an abiding belief that the verdict should be one way and others have an abiding belief it should be the other way, you-all do your duty by not deciding. Okay? You-all have to vote the same way. If you don't all vote the same way, then it doesn't work.

THE COURT: [Counsel for Thompson], move a long to the questions that I ordered you to ask and let's wrap this up, please . . . .

[Counsel for Thompson]: Okay. But it is okay if y'all can't decide one hundred percent. All right? That's a hung jury. That's perfectly fine. You all will have done your duty.

THE COURT: [Counsel for Thompson], I'm not going to ask you again, ma'am, or you're going to sit down.

[Counsel for Thompson]: How many people believe that punishment should rehabilitate a person by a show of hands? Okay. What about deter them from doing another crime? What about just punishing them in general?
Can anybody come up with a question that I haven't asked but should have?
[Addressing a specific venire person], I believe that you said that you had an experience with someone who had --

THE COURT: [Counsel for Thompson], have a seat, please . . . . Your voir dire is concluded.

Thompson's counsel objected to not being given more time to examine the panel, but the trial court overruled her objection, stating in relevant part:

> Let the record reflect that voir dire for [Thompson's counsel] started at 11:19 a.m. I gave each side 35 minutes. Her voir dire concluded at 11:54. I have gave warnings at seven minutes, five minutes, three minute, and one minute. Then the Court allotted [Thompson's counsel] an additional eight minutes to where she ceased voir dire at 12:02. At which time she was not even one-third through her list of 188 questions.

The trial court admitted, as a record exhibit, a list of the 131 further questions that Thompson's counsel had intended to ask on voir dire.

Here, Thompson's counsel was not limited in the questions she could ask; rather, the trial court was merely enforcing the previously established time limit that she, herself, had requested. *See Boyd v. State*, 811 S.W.2d 105, 116 (Tex. Crim. App. 1991) ("Nothing in the record suggests that the trial court abused its discretion in setting time limits and enforcing them against defense counsel."). Thompson's counsel had the responsibility to gauge the subject matter at hand, weigh the relative importance of the legal issues sought to be addressed during voir dire examination, and then budget the time allowed by the trial court to cover those issues. *See Whitaker*, 653 S.W.2d at 781; *Splawn v. State*, 949 S.W.2d 867, 872 (Tex. App.—Dallas 1997, no pet.). By engaging in lengthy discussions of some issues at the expense of others, it appears that Thompson's counsel did not appropriately budget her time. *See Whitaker*, 653 S.W.2d at 781. Under these facts and circumstances, we cannot conclude that the trial court abused its discretion by denying Thompson's counsel additional time. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     October 24, 2017
Date Decided:       October 25, 2017

Do Not Publish

11